**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON**

ROBERT FULLER,                                  :

                    Plaintiff,

   -vs-

MICHAEL J. ASTRUE,
COMMISSIONER OF
SOCIAL SECURITY,

                  Defendant.        :

Case No. 3:10-cv-330

District Judge Timothy S. Black
Magistrate Judge Michael R. Merz

**REPORT AND RECOMMENDATIONS**

Plaintiff brought this action pursuant to 42 U.S.C. §405(g) for judicial review of the final decision of Defendant Commissioner of Social Security (the "Commissioner") denying Plaintiff's application for Social Security benefits. The case is now before the Court for decision after briefing by the parties directed to the record as a whole.

Judicial review of the Commissioner's decision is limited in scope by the statute which permits judicial review, 42 U.S.C. §405(g). The Court's sole function is to determine whether the record as a whole contains substantial evidence to support the Commissioner's decision. The Commissioner's findings must be affirmed if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *citing, Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *Landsaw v. Secretary of Health and Human Services*, 803 F.2d 211, 213 (6th Cir. 1986). Substantial evidence

is more than a mere scintilla, but only so much as would be required to prevent a directed verdict (now judgment as a matter of law), against the Commissioner if this case were being tried to a jury. *Foster v. Bowen*, 853 F.2d 483, 486 (6th Cir. 1988);  *NLRB v. Columbian Enameling & Stamping Co.*, 306 U.S. 292, 300 (1939).

In deciding whether the Commissioner's findings are supported by substantial evidence, the Court must consider the record as a whole.  *Hepner v. Mathews*, 574 F.2d 359 (6th Cir. 1978);  *Houston v. Secretary of Health and Human Services*, 736 F.2d 365  (6th Cir. 1984);  *Garner v. Heckler*, 745 F.2d 383 (6th Cir. 1984).  However, the Court may not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility.  *Garner, supra.*  If the Commissioner's decision is supported by substantial evidence, it must be affirmed even if the Court as a trier of fact would have arrived at a different conclusion.  *Elkins v. Secretary of Health and Human Services*, 658 F.2d  437, 439 (6th Cir. 1981).

To qualify for disability insurance benefits (SSD), a claimant must meet certain insured status requirements, be under age sixty-five, file an application for such benefits, and be under a disability as defined in the Social Security Act, 42 U.S.C. § 423.  To establish disability, a claimant must prove that he or she suffers from a medically determinable physical or mental impairment that can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. § 423(d)(1)(A). Secondly, these impairments must render the claimant unable to engage in the claimant's previous work or in any other substantial gainful employment which exists in the national economy.  42 U.S.C. §423(d)(2).

The Commissioner has established a sequential evaluation process for disability determinations.  20 C.F.R. §404.1520.  First, if the claimant is currently engaged in substantial

gainful activity, the claimant is found not disabled. Second, if the claimant is not presently engaged in substantial gainful activity, the Commissioner determines if the claimant has a severe impairment or impairments; if not, the claimant is found not disabled. Third, if the claimant has a severe impairment, it is compared with the Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1. If the impairment is listed or is medically equivalent to a listed impairment, the claimant is found disabled and benefits are awarded. 20 C.F.R. §404.1520(d). Fourth, if the claimant's impairments do not meet or equal a listed impairment, the Commissioner determines if the impairments prevent the claimant from returning to his regular previous employment; if not, the claimant is found not disabled. Fifth, if the claimant is unable to return to his regular previous employment, he has established a *prima facie* case of disability and the burden of proof shifts to the Commissioner to show that there is work which exists in significant numbers in the national economy which the claimant can perform. *Bowen v. Yuckert,* 482 U.S. 137, 145, n.5 (1987).

Plaintiff filed an application for SSD on June 21, 2004, alleging disability from October 30, 2003, due to migraine headaches, low back, knee, and left foot and heel impairments. (Tr. 69-71; 81). The Commissioner denied Plaintiff's application initially and on reconsideration. (Tr. 55-57; 60-62). Administrative Law Judge Melvin Padilla held a hearing, (Tr. 914-47), following which he determined that Plaintiff is not disabled. (Tr. 11-29). The Appeals Council denied Plaintiff's request for review, (Tr. 5-7), and Judge Padilla's decision became the Commissioner's final decision.

In determining that Plaintiff is not disabled, Judge Padilla found that Plaintiff has severe tension migraines with neck discomfort and right shoulder impairment with residuals of surgeries in the late record (October, 2006 and June, 2007), but that he does not have an impairment

or combination of impairments that meets or equals the Listings. (Tr. 18, ¶ 3; Tr. 23, ¶ 4). Judge Padilla also found that Plaintiff has the residual functional capacity to perform a limited range of medium work. *Id*., ¶ 5. Judge Padilla then used sections 203.28 through 203.31 of the Grid as a framework for deciding, coupled with a vocational expert's (VE) testimony, and concluded that there is a significant number of jobs in the economy that Plaintiff is capable of performing. (Tr. 27, ¶ 11). Judge Padilla concluded that Plaintiff is not disabled and therefore not entitled to benefits under the Act. (Tr. 28, ¶ 12).

The record contains a copy of Plaintiff's medical treatment notes from Veteran's Administration health facilities which are dated August 2000 through March 2007. (Tr. 138-78; 202-99; 316-494; 521-645). Those notes reveal that Plaintiff received treatment at the VA facilities for various medical conditions including GERD, hypertension, high cholesterol, pulled groin muscle, cellulitis, biceps tendinitis, and heel spurs as well as post concussive disorder with migraine headaches. *Id.* In October, 2002, Plaintiff's neurologist at the VA noted that Plaintiff complained of a recent increase in his headaches, that his medications no longer controlled the headaches, and that he had a "constant headache". *Id.* The neurologist identified Plaintiff's diagnosis as migraine and tension headaches. *Id.*

Plaintiff continued to receive treatment at the VA for his complaints of, *inter alia*, headaches and right shoulder and neck pain. *Id.* In October, 2004, Plaintiff's health care provider at the VA reported that Plaintiff's pupils were extremely light sensitive, he had decreased sensation along the left side of his face, and no vibratory sense on the left side of his head. *Id.* In January, 2005, it was noted that Plaintiff reported that his headaches significantly interfered with his physical activity, normal work, sleep, and concentration. *Id.* Plaintiff's health care provider at the VE noted

on February 3, 2005, that Plaintiff reported that medications helped relieve his headaches, but that he continued to have migraine headaches about four times a week and it was noted that Plaintiff had decreased vibration on the left side and decreased pinprick of the left face, left arm, and left leg. *Id.*

In May, 2005, Plaintiff's health care provider at the VA noted that Plaintiff had a positive impingement sign and tenderness over the AC joint of his right shoulder. *Id.* On February 9, 2006, Plaintiff exhibited a reduced range of motion and strength of his right shoulder. *Id.* Plaintiff underwent a series of physical therapy treatments and injections in his shoulder which gave him temporary relief and on October 18, 2006, he underwent right shoulder surgery with debridement, AC joint decompression, and resection. *Id.* Initially, Plaintiff did well post-operatively, but subsequently again complained of pain as well as a "popping" sensation in his shoulder. *Id.* Plaintiff underwent a second right shoulder surgery in June 13, 2007, to repair a rotator cuff tear with clavicle excision. *Id.*

The record contains Plaintiff's treatment notes dated January 2001 to December 2003 from Sandhills Family Practice where Plaintiff received treatment from Dr. McConville. (Tr. 179-85, 300-15). Those notes reveal that Dr. McConville treated Plaintiff for various medical conditions including upper respiratory infections, fatigue, stomach pain, ingrown toenails, and depression with insomnia. *Id.* Following Plaintiff's involvement in a vehicular accident on November 14, 2002, Dr. McConville noted that Plaintiff reported increased headaches, decreased memory, and neck pain with radiation into the back of his head. *Id.* Dr. McConville identified Plaintiff's diagnoses as post concussive syndrome and cervical sprain/strain. *Id.*

Plaintiff consulted with neurologist Dr. Deochand on March 31, 2003, who reported that Plaintiff had mildly reduced light touch sensation of the left hemicranium involving cranial

nerve V and C2-3 dermatomes. (Tr. 136-37). Dr. Deochand identified Plaintiff's diagnoses as post-traumatic suboccipital neuralgia and history of migraines worse after motor vehicle accident. *Id.* Plaintiff continued to treat with Dr. Deochand through October, 2003. (Tr. 125-35).

Examining physician Dr. Oza reported on September 21, 2004, that Plaintiff had restricted range of motion of his right shoulder, tenderness to palpation of his right shoulder, restricted range of motion of his cervical spine, and that he complained of pain on palpation of the cervical spine. (Tr. 186-88). Dr. Oza also reported that Plaintiff had tenderness on palpation of the lower lumbar spine, positive straight leg raising at about forty-five degrees, complaints of pain on range of motion toward extremes at both knees and some crepitations, a reduced range of motion of the lumbar spine, and that he could walk on his heels but not on his toes. *Id.* Dr. Oza noted that Plaintiff had no neurosensory deficit and she identified Plaintiff's diagnoses as history of high blood pressure, migraine headaches, and mixed kind of headaches which occur every day, rotator cuff injury of his right shoulder, chronic cervical sprain possibly a disc protrusion, chronic low back pain, arthritis in his knees and shoulders, and bony spur over the left Achilles tendon. *Id.* Dr. Oza opined that Plaintiff's abilities to perform prolonged sitting, walking, and lifting would be affected by his impairments and provided that his headaches are taken care of, Plaintiff could perform light work where there was not much lifting. *Id.*

Examining psychiatrist Dr. Walters reported on April 7, 2007, that Plaintiff was alert and oriented, had clear speech, sensory examination revealed nonphysiologic decrease in pinprick in his left face/arm/leg, his right shoulder was mildly tender over the anterior aspect, and that he had decreased ranges of motion of his right shoulder. (Tr. 495-98). Dr. Walters also reported that Plaintiff had reduced ranges of motion of his neck, severe migraine headaches which caused him

6

to have vision problems and was status-post surgery on his right shoulder. *Id.* Dr. Walters opined that Plaintiff had a combination of impairments, both physical and emotional, that interfered with his ability to perform substantial gainful work activity in a competitive market on a sustained basis and that he had been disabled since October, 2003. *Id.* Dr. Walters also opined that Plaintiff was able to stand/walk, sit, and alternate positions each for up to one-half hour in an eight hour workday, lift up to ten pounds frequently and up to twenty pounds occasionally, that he was not able to perform either sedentary or light work, and that he was permanently and totally disabled. *Id.*

Examining psychologist Dr. Bromberg reported on April 23, 2007, that Plaintiff graduated from high school, received two years of job-related training, has no history of mental health treatment, had normal psychomotor behaviors, was cooperative, and that his speech was normal. (Tr. 505-15). Dr. Bromberg also reported that Plaintiff's mood appeared anxious, he scored in the mild depression range on the Burns Depression Checklist and in the mild anxiety range on the Burns Anxiety Inventory, he was alert and oriented, his judgment appeared to be adequate, and that his insight appeared to be fair. *Id.* Dr. Bromberg identified Plaintiff's diagnoses as pain disorder associated both with psychological factors and a general medical condition and dysthymic disorder; he assigned Plaintiff a GAF of 50. *Id.* Dr. Bromberg opined that Plaintiff's abilities to relate to others, to maintain attention and concentration, and to withstand the stress and pressures associated with day-to-day work activity were markedly impaired and his ability to understand, remember, and follow instructions was moderately impaired. *Id.*

In his Statement of Errors, Plaintiff alleges that the Commissioner erred by rejecting Drs. Walters' and Bromberg's opinions. (Doc. 6). Plaintiff also argues that, at a minimum, this matter should be remanded under Sentence 6 of 42 U.S.C. § 405(g) for the consideration of new and

material evidence. *Id.*

In support of his first Error, Plaintiff initially argues that the Commissioner erred by rejecting Dr. Walters' opinion. Indeed, Judge Padilla gave "no weight" to Dr. Walters' opinion on the bases that Dr. Walters was not a treating source, that his opinion was not supported by his clinical findings, and because it was inconsistent with other evidence of record.

A physician's statement that a claimant is disabled is of course not determinative of the ultimate issue. *See, Landsaw v. Secretary of Health and Human Services,* 803 F.2d 211, 213 (6th Cir. 1986). A physician's broad conclusory formulations regarding the ultimate issue of disability, which must be decided by the Commissioner, are not determinative of the question of whether an individual is under a disability. *Id.* The weight accorded to a physician's opinion is dependent on whether it is well supported by medically acceptable clinical and laboratory techniques and whether it is inconsistent with the other substantial evidence in the record. *Cf., Cutlip v. Secretary of Health and Human Services,* 25 F.3d 284 (6th Cir. 1994). Stated differently, the Commissioner may properly reject a physician's opinion if it is not supported by sufficient medical data or if it is inconsistent with the other evidence of record. *Cf., Kirk v. Secretary of Health and Human Services,* 667 F.2d 524 (6th Cir. 1981), *cert. denied,* 461 U.S. 957 (1983). However, the ALJ must provide "good reasons" for discounting treating physicians' opinions, reasons that are "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Rogers v. Commissioner of Social Security,* 486 F.3d 234, 242, (6th Cir. 2007)(citation omitted).

First, there is no dispute that Dr. Walters is not a treating physician but rather, he examined Plaintiff on one occasion at the request of Plaintiff's counsel. Although Dr. Walters

8

essentially opined that Plaintiff has a combination of impairments, both physical and emotional, which prevents him from performing substantial work activity, he reported few objective findings which support his opinion. First, Dr. Walters acknowledged that he was performing a neurological examination, yet he opined that Plaintiff was disabled by a combination of physical and emotional impairments, an opinion, in this case, which is outside Dr. Walters' area of expertise.  Further, in support of his conclusions, Dr. Walters primarily recited Plaintiff's subjective complaints.  In addition, Dr. Walters reported that Plaintiff walked with a normal gait, was alert and oriented, had clear speech, an intact cranial nerve exam, intact motor examinations, normal reflexes, and intact coordination.   In contrast, Dr. Walters reported that Plaintiff has, at worst, a nonphysiologic decrease in pinprick sensation, mild tenderness of his shoulder and cervical spine, and decreased range of motion of his shoulder.

Dr. Walters' opinion is also inconsistent with other evidence of record.  For example, while Dr. Walters opined that Plaintiff is basically incapable of performing any postural activities, that is inconsistent with the evidence that Plaintiff is the sole care-giver for his two young children, his abilities to move sheet rock,  work out with weights, walk one and one-half miles three or four times a week, and walk his dog for one hour daily. (Tr. 146, 258, 539, 540).  Dr. Walter's opinion is also inconsistent with Dr. Oza's findings and opinion as well as with the reviewing physicians' opinions.  (Tr. 194-201).

Under these facts, the Commissioner had an adequate basis for rejecting Dr. Walters' opinion.

Plaintiff argues next that the Commissioner erred by rejecting psychologist Dr. Bromberg's opinion that he is disabled by his alleged mental impairment.

9

Judge Padilla determined that Plaintiff does not have a severe mental impairment. (Tr. 20). In doing so, he specifically rejected Dr. Bromberg's opinion on the bases that Dr. Bromberg was not a treating source, his opinion was based primarily on Plaintiff's subjective complaints, and it was inconsistent with other evidence of record. (Tr. 20-22).

First, even assuming that Plaintiff has a severe mental impairment, the Commissioner did not commit reversible error by failing to reach that conclusion because Judge Padilla determined that Plaintiff has at least one other severe impairment and then went on with the remaining steps in the disability evaluation. *See, Maziarz v. Secretary of Health and Human Services,* 837 F.2d 240, 244 (6th Cir. 1987).

Second, as with Dr. Walters, there is no dispute that Dr. Bromberg is not a treating source and that he examined Plaintiff on only one occasion.

Third, Plaintiff acknowledges that his treatment records from the VA facilities do not document any treatment for an alleged mental impairment. PageID 52. Plaintiff's position is that he was treated for insomnia and depression in 2001 by another health care provider. *Id.* However, Dr. McConville's office notes reflect that he identified depression and/or insomnia as two of Plaintiff's diagnoses on four occasions, *see,* Tr. 398, 309, 311, 312, those notes do not reflect that Dr. McConville provided Plaintiff with any specific treatment for either disorder. (Tr. 179-85; 300-15).

Although Dr. Bromberg essentially opined that Plaintiff is disabled, he noted that Plaintiff indeed has no history of mental health treatment, had normal psychomotor behaviors, was cooperative, had normal speech, was alert and oriented, had adequate judgment, and that his insight appeared to be fair. In addition, Dr. Bromberg noted that Plaintiff scored, at worst, in the mild range

10

on both the depression and anxiety scales. There findings are inconsistent with Dr. Bromberg's opinion that Plaintiff is disabled by an alleged mental impairment.

Under these facts, the Commissioner had an adequate basis for rejecting Dr. Bromberg's opinion.

Plaintiff argues in support of his second Error that this matter should be remanded for the consideration of additional evidence. Plaintiff's position is that the Commissioner should consider evidence he presented at the time of his hearing and which Judge Padilla declined to include in the record and which he (Plaintiff) submitted to the Appeals Council.

At the hearing, Plaintiff's counsel presented the evidence at issue to Judge Padilla for inclusion in the record. (Tr. 916-17). However, Judge Padilla determined that the proffered evidence was too remote and irrelevant to Plaintiff's alleged onset date and that it was already mentioned in physicians' records. *Id.* Plaintiff subsequently submitted the evidence to the Appeals Council. (Tr. 646-913).[1]

The remand provision of 42 U.S.C. §405(g) provides that the court may order a case remanded to the Commissioner for further consideration "only upon a showing that there is new evidence which is material and there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." 42 U.S.C. §405(g); *see also, Casey v. Secretary of Health and Human Services,* 987 F.2d 1230, 1233 (6th Cir. 1993).

The court may review new evidence submitted after the Administrative Law Judge's decision for the limited purpose of determining the appropriateness of a remand to the Commissioner under sentence six of 42 U.S.C. §405(g). *Wyatt v. Secretary of Health and Human Services,* 974

---

[1] Some of the evidence which Plaintiff submitted to the Appeals Council was not included in the evidence which he proffered at the time of his hearing before Judge Padilla.

F.2d 680, 685 (6th Cir. 1992). Such remand is appropriate, however, only if the court finds that the evidence is new and material and there is good cause for the failure to incorporate that evidence into the record of the prior proceeding. *Sizemore v. Secretary of Health and Human Services,* 865 F.2d 709, 711 (6th Cir. 1988).

To establish materiality, the plaintiff must show, "a reasonable probability that the Commissioner would have reached a different disposition of the disability claim if presented with the new evidence." *Sizemore,* 865 F.2d at 711 (citations omitted). New evidence on an issue already fully considered by the Commissioner is cumulative and is not sufficient to warrant remand of the matter. *Carroll v. Califano,* 619 F.2d 1157, 1162 (6th Cir. 1980). Additional evidence is material only if it concerns the plaintiff's condition prior to the Commissioner's decision. *Oliver v. Secretary of Health and Human Services,* 804 F.2d 964, 966 (6th Cir. 1986). Evidence of a subsequent deterioration or change in the plaintiff's condition after the administrative hearing is deemed immaterial. *Wyatt,* 974 F.2d at 685, *citing, Sizemore,* 865 F.2d at 712.

To show good cause, plaintiff must present some justification for the failure to have acquired and presented such evidence to the Commissioner for inclusion in the record during the hearing before the Administrative Law Judge. *See, Willis v. Secretary of Health and Human Services,* 727 F.2d 551 (6th Cir. 1984); *see also, Oliver, supra.* Additional evidence generated for the purpose of attempting to prove disability in contrast to evidence produced by continued medical treatment does not meet the good cause requirement of the Act. *Koulizos v. Secretary of Health and Human Services,* No. 85-1654 (6th Cir. Aug. 9, 1986) (table 802 F.2d 458).

The Court will assume that Plaintiff has established the good cause requirement for remand. The question, then, is whether the additional evidence satisfies the materiality requirement

for remand.

The evidence at issue consists of voluminous medical records from Dr. McConville dated September 1999 to November 13, 2003. (Tr. 709-61). First, almost half of those records are copies of prescriptions for Percocet or otherwise relate to prescriptions for Percocet. (Tr. 709-40). Second, the records from Dr. McConville relate primarily to a period of time prior to Plaintiff's alleged onset date of October, 2003. *Id.* Finally, the one clinical note that does relate to a period of time subsequent to Plaintiff's alleged onset date is a copy of a Percocet prescription. (Tr. 709).

In addition to records from Dr. McConville, the additional evidence consists voluminous medical records from the U.S Army dated 1990 through 1999, and VA Disability Ratings decisions dated 2000 through 2004. (Tr. 761-913). With the exception of some of the Disability Ratings decisions, these records relate to a period of time long before Plaintiff's alleged onset date. To the extent that they establish Plaintiff's history of concussions which allegedly contributed to his migraine headaches, which headaches date back to 1997, that is established by medical treatment notes which are a part of the record and which the Commissioner considered.

With respect to the Disability Ratings decisions, again, several of those decisions pre-date Plaintiff's alleged onset date. (Tr. 887-913). While Plaintiff seems to argue that the Commissioner should give the VA's October 31, 2003, decision significant weight, the Commissioner is not required to do so. The Commissioner's regulations provide that he is not bound by findings of disability made by any nongovernmental agency or any other governmental agency about whether an individual is disabled. 20 C.F.R. § 404.1504.

This Court concludes that Plaintiff has failed to establish the materiality requirement for remand. Stated differently, Plaintiff has failed to show, "a reasonable probability that the

13

Commissioner would have reached a different disposition of the disability claim if presented with the [additional] evidence."

The Court's duty on appeal is not to re-weigh the evidence, but to determine whether the decision below is supported by substantial evidence. *See, Raisor v. Schweiker,* 540 F.Supp. 686 (S.D.Ohio 1982). The evidence "must do more than create a suspicion of the existence of the fact to be established. ... [I]t must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn from it is one of fact for the jury." *LeMaster v. Secretary of Health and Human Services,* 802 F.2d 839, 840 (6th Cir. 1986), *quoting, NLRB v. Columbian Enameling & Stamping Co.,* 306 U.S. 292, 300 (1939). The Commissioner's decision in this case is supported by such evidence.

It is therefore recommended that the Commissioner's decision that Plaintiff was not disabled and therefore not entitled to benefits under the Act be affirmed.

April 14, 2011.

*s/ Michael R. Merz*
United States Magistrate Judge

NOTICE REGARDING OBJECTIONS

Pursuant to Fed.R.Civ.P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Pursuant to Fed.R.Civ.P. 6(e), this period is automatically extended to seventeen days because this Report is being served by one of the methods of service listed in Fed.R.Civ.P. 5(b)(2)(B), (C), or (D) and may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record,

or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within fourteen days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See, United States v. Walters,* 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985).